UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SAMMY ELJAMAL,

                    Debtor.

-------------------------------------------------------------X

SAMMY ELJAMAL,

                  Appellant,

     -v-

OFFICE OF THE UNITED STATES TRUSTEE;
NY FUEL HOLDINGS, LLC; METRO NY
DEALER STATIONS, LLC; NY DEALER
STATIONS LLC; and NY FUEL DISTRIBUTORS,
LLC,

                  Appellees.

Case No. 17-CV-7870 (KMK)

<u>OPINION AND ORDER</u>

<u>Appearances</u>:

Anne J. Penachio, Esq.
Penachio Malera LLP
White Plains, NY
*Counsel for Debtor-Appellant*

Joseph P. Garland, Esq.
Law Office of Joseph P. Garland
Mount Vernon, NY
*Counsel for Debtor-Appellant*

Andrew D. Velez-Rivera, Esq.
Paul K. Schwartzberg, Esq.
Office of the United States Trustee
New York, NY
*Counsel for Appellee United States Trustee*

Michael Luskin, Esq.
Stephan Edward Hornung, Esq.

Luskin, Stern & Eisler LLP
New York, NY
*Counsel for Appellees NY Companies*

Albert Togut, Esq.
Togut, Segal & Segal LLP
New York, NY
*Counsel for Trustee Stephen S. Gray*

KENNETH M. KARAS, District Judge:

Appellant Sammy Eljamal ("Debtor") appeals from the bankruptcy court's "Order Pursuant to 11 U.S.C. § 1104(a)(2) Directing the Appointment of a Chapter 11 Trustee" (the "Trustee Order"), dated June 6, 2017.  (*See* Dkt. No. 1.)[1]  More specifically, Debtor appeals on the issue of whether the bankruptcy court abused its discretion when it granted the motion of the United States Trustee (the "UST") to appoint a Chapter 11 trustee under 11 U.S.C. § 1104(a)(2). (*Id.*)[2]  For the reasons given herein, the judgment of the bankruptcy court is affirmed.

## I. Factual and Procedural Background

### A.  Initial Chapter 11 Petition

This case arose out of contentious pre-bankruptcy disputes between Debtor and various creditors, prior to Debtor filing for bankruptcy relief on June 18, 2015.  (*See* A11.)[3]  First, Debtor was engaged in a civil suit in New York state court against Brent Coscia ("Coscia"), a

---

[1] Citations to "Dkt. No." refer to this Court's docket in case number 17-CV-7870.

[2] Along with this appeal, Debtor also appealed the later order approving the United States Trustee's appointment of Stephen S. Gray as Chapter 11 trustee.  (*See* Dkt. Case No. 17-CV-7875.)  However, Debtor has advised the Court that he is no longer pursuing that appeal.  (*See* Dkt. Nos. 11–12 (Case No. 17-CV-7875).)

[3] Citations beginning with the letter "A" are citations to Debtor's Appendix, filed with his opening brief, at Dkt. No. 12, unless otherwise noted.

former employee, based on claims of malicious prosecution and other related tort claims. (*See* A34–A35.) Debtor voluntarily filed for bankruptcy relief after the jury returned a verdict in Coscia's favor and awarded Coscia compensatory damages totaling $3,285,000, plus punitive damages of $1,500,000. (*See* A35.)[4] At the time Debtor filed for bankruptcy relief, a lawsuit was also pending between him and his business partners James A. Weil ("Weil") and Leon Silverman ("Silverman"), who were shareholders in NY Fuel Distributors, LLC and related entities, (the "NY Companies"). (*See* A77–A78.)[5] Debtor continues to hold an equity interest in the NY Companies. (*See* Hr'g Tr. 7–8 (June 5, 2017 Hr'g) ("June 5, 2017 Hr'g Tr.") (Bankr. Dkt. No. 622).)[6] After Debtor filed for bankruptcy relief, the action between Debtor and the NY Companies was transferred to the bankruptcy court on September 21, 2015. (*See* A69.)

On June 18, 2015, Debtor petitioned for Chapter 11 bankruptcy relief in the United States Bankruptcy Court for the Southern District of New York. (A11.) On July 16, 2015, the UST appointed a three-member Committee of Unsecured Creditors ("the Committee"). (A20.) The creditors appointed to the Committee were: (1) Coscia; (2) JMM Fuelco, LLC ("JMM"), an

---

[4] Debtor notes that while he filed for bankruptcy relief voluntarily "to protect [his] assets from seizure following a series of adverse rulings in New York State Court litigation," he remained solvent and retained "assets that greatly exceeded his liabilities." (*See* Br. for Appellant Sammy Eljamal ("Debtor Br.") 5 (Dkt. No. 12).)

[5] Debtor commenced the action against the New York Companies in New York state court, but that action was later removed to federal district court. (*See* A69.)

[6] Citations to "Bankr. Dkt. No." refer to the bankruptcy court's docket in case number 15-BK-22872.

entity whose managing member is Weil; and (3) GasLand Petroleum, Inc., a supplier of gasoline-related products.  (*Id.*)[7]

B.  Increasing Contentiousness Between the Parties

As the bankruptcy court has noted, the relationship between the Parties has been contentious from the start of the proceedings, with various disputes arising throughout the case. (*See, e.g.*, Hr'g Tr. 22–23 (Jan. 6, 2017 Hr'g) ("Jan. 6, 2017 Hr'g Tr.") (A370); Hr'g Tr. 18–19 (Feb. 14, 2017 Hr'g) ("Feb. 14, 2017 Hr'g Tr.") (A414); June 5, 2017 Hr'g Tr. 14–15.)[8]  Indeed, the Committee and the UST (collectively, "Appellees") accused Debtor of abusing the litigation process several times throughout the proceedings.  (*See* A30–A39.)  For example, on July 17, 2015, shortly after bankruptcy proceedings began, Appellees moved for an order directing Debtor to produce documents pursuant to Federal Rules of Bankruptcy Procedure 2004.  (*See* Bankr. Dkt. No. 25.)  However, according to the Committee, Debtor did "not produce[] all requested documents, and . . . substantially delayed the Committee's Rule 2004 discovery by showing up hours late to examinations, providing non-responsive answers, and denying the validity of documents produced by his own accountant."  (*See* Dec. 15, 2016 Disclosure Statement 14 ("Disclosure Statement") (Bankr. Dkt. No. 411).)  Also, on September 10, 2015, Debtor filed a state court lawsuit against Weil.  (*See id.*)  In response, the Committee filed a motion in the bankruptcy case seeking an order requiring Debtor to obtain bankruptcy court approval prior to commencing new actions.  (*See* Mot. for Court Approval (Bankr. Dkt. No.

---

[7] GasLand later withdrew and resigned from the Committee after it settled its claim with Debtor on May 18, 2016.  (A62.)

[8] The Court cites to the bankruptcy court's docket for portions of hearing transcript where the docket document has been provided as part of the record in this case.  Where the docket entry has not been provided the court cites to the Debtor's Appendix.

4

135).) Debtor consented to seeking bankruptcy court authorization before filing new actions, but expressed his belief that Silverman and Weil, "used hyper-technical provisions of various operating agreements to seize his valuable corporate interests for their own gain." (Debtor Statement on Court Approval Mot. ¶ 5 (Bankr. Dkt. No. 166).)

Throughout 2016, tensions continued to rise between Debtor and the Committee. On March 30, 2016, Debtor filed a motion seeking documents and asking to depose Weil and Coscia under Bankruptcy Rule 2004. (A128.) Debtor alleged that Weil "may be seeking to advance a plan for his own personal gain rather than for the benefit of all creditors," (*see* Notice of Presentment Directing Exam. of James Weil ¶ 26 (Bankr. Dkt. No. 209)), and accused Weil of "de facto acquir[ing] Coscia's claim," (*see id.* at ¶ 28). On April 15, 2016, the Committee objected to Debtor's Bankruptcy Rule 2004 motions, arguing that they "raise serious concerns that the Debtor is using Rule 2004 as a tool to further harass members of the Committee." (*See* Omnibus Obj. of Cmte. to Debtor's Mots. 2 ("Omnibus Obj. of Cmte.") (Bankr. Dkt. No. 233).) Prior to the Committee's response, Debtor filed a motion on March 31, 2016, seeking to expunge several of JMM and Weil's claims, "in light of the fact that all claimants are represented by the same counsel." (*See* Debtor's Application to Expunge 1–2 (Bankr. Dkt. No. 213).) On April 8, 2016, the Committee filed a separate complaint against Centralized Management Services, Inc. ("CMS") and Musa El Jamal ("Debtor's father"), alleging that Debtor "obfuscates his finances by using CMS as his personal piggy bank, thereby shielding his assets from creditors." (*See* Cmte.'s Complaint Against CMS and Musa Eljamal 2 (Bankr. Dkt. No. 223).)

According to the bankruptcy court, at the time the Trustee was appointed, the Parties were two years into the bankruptcy proceedings, had filed competing reorganization plans, and

had engaged in three failed mediations. (June 5, 2017 Hr'g. Tr. 12.) The Parties first engaged in mediation proceedings after the bankruptcy court signed an order directing mediation between Debtor and the Committee on February 2, 2016. (*See* A33.) This order came after Debtor asserted that he had been delayed in filing a proposed reorganization plan because "it was difficult to commence constructive communications [with the Committee] given the long term discord among the [P]arties." (*See* Debtor's Reply to Cmte.'s Opp'n to Extension of Exclusive Period ¶ 20 (Bankr. Dkt. No. 168).) Between January and March 2016, Debtor and the Committee engaged in several mediation sessions conducted by Bankruptcy Judge Francis G. Conrad. (*See* A33; A69.) Ultimately, however, mediation was unsuccessful. (Mediator's Report ¶ 7 (Bankr. Dkt. No. 275).) On March 28, 2016, the Committee filed a proposed Chapter 11 plan, under which Debtor would transfer all of his property to a trust and a trustee would then liquidate the assets and distribute the proceeds to creditors. (*See* A27; *see also* Bankr. Dkt. No. 204.) However, Debtor opposed this initial reorganization plan and no settlement was reached. (*See* Bankr. Dkt. No. 208; 213.)

On July 13, 2016, the UST, supported by the Committee, moved for an order authorizing the appointment of an examiner under 11 U.S.C. § 1104(c) ("the Examiner Motion"), arguing that an "independent examiner is needed to determine if the [P]arties are acting in good faith." (*See* UST Mem. in Supp. of Examiner Mot. 1 (Bankr. Dkt. No. 273).) Debtor objected to the motion, and the bankruptcy court held a hearing on September 14, 2016. (*See* A135.) Ultimately, the bankruptcy court deferred ruling on the need for an examiner in favor of giving the Parties "a brief period to see if they can't settle their disputes" without the interference of a third party. (Hr'g Tr. 22 (Sept. 14, 2016 Hr'g) (Bankr. Dkt. No. 345).) The Parties then

attempted a second mediation, but were again unable to resolve the outstanding issues. (*See* A135–A136.) On December 15, 2016, the Committee filed the first amended reorganization plan, which was the second reorganization plan considered by the Parties. (*See* A63; *see also* A136.)[9] Again, however, the Parties failed to come to an agreement on the plan's terms. (*See* A360.)

C. Appointment of a Trustee

On January 18, 2017, Debtor's father filed a motion to disqualify the Oxman Law Group, which was representing Coscia. (A137.) In filings related to this motion it was disclosed that that the NY Companies, in which Debtor still owned an interest, were advancing payment for legal fees incurred by Coscia in the bankruptcy case and by Weil in his pre-petition litigation against Debtor. (*See* A117–A118.) At the February 7, 2017 hearing on Debtor's father's motion, the bankruptcy court raised the prospect of appointing a trustee for the first time, given the troubling revelations raised in the filings and its concern that the "[C]ommittee [was] not looking out for unsecured creditors." (*See* Hr'g. Tr. 22 (Feb. 7, 2017 Hr'g) (A394).) At a hearing on February 14, 2017, the bankruptcy court again contemplated the appointment of a Chapter 11 trustee, stating that "[t]o my mind, based on what I've read both here and through this case at this point, my strong inclination is to appoint a trustee and disband the committee and just have the trustee operate the case. I don't trust anyone in this case at this point. Anyone." (*See* Feb. 14, 2017 Hr'g. Tr. 19.)

---

[9] The Committee's proposed plan provided that most of Debtor's unsecured creditors would receive cash in the amount of their allowed claims, though insiders would have their claims subordinated. (*See* A74–A76.) The plan was to be primarily funded by a $9,480,000 infusion from the NY Companies and would simultaneously divest Debtor of any ownership rights in the NY Companies. (*See* A77.)

On March 3, 2017, Debtor and his father filed a motion for sanctions against Coscia and the Committee for violation of Bankruptcy Rule 2019. (*See* A114.)[10] Then, on March 7, 2017, the UST filed a motion in the bankruptcy court for the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(2) (the "Trustee Motion"), asserting that a trustee should be appointed because "[t]he acrimony between the [P]arties has mired this case in litigation and allegations instead of progress towards reorganization." (*See* A149–A150.) On April 4, 2017, the Committee joined in the UST's Motion, arguing that Debtor refused to negotiate with his creditors, failed to focus on an exit strategy, and failed to deliver requested documents and information to the Committee. (*See* A163–A164.) In response, Debtor filed an objection to the joint motion of the UST and the Committee. (Debtor Mem. of Law in Opp'n to Trustee Mot. (Bankr. Dkt. No. 578).) While Debtor did not dispute that "acrimony . . . infects the case," (*id.* at 10), he opposed the appointment of a trustee, contending that the "drastic remedy of the appointment of a trustee will not inure to the benefit of the Debtor, his estate (the "Estate"), or the creditors therein," (*id.* at 1).

On April 4, 2017, almost two years into the bankruptcy case, Debtor and his father filed a third proposed reorganization plan. (*See* A178.) The Parties then agreed to adjourn a hearing on the Trustee Motion so that the bankruptcy court could conduct a third mediation session. (*See* June 5, 2017 Hr'g Tr. 3.) However, the mediation was again unsuccessful. (*See id.* at 4–5.)

On June 5, 2017, the bankruptcy court held a hearing to consider the UST's motion for a trustee. (*See id.* at 1.) During the hearing, the bankruptcy court acknowledged that "[t]he court

---

[10] Debtor also moved to disallow Coscia's claim, preclude Coscia from voting on a plan of reorganization in the bankruptcy case, and remove Coscia from the Committee, given the revelation that Coscia's legal fees were being advanced. (A114.)

should not appoint a trustee lightly under § 1104 (a)(2) and in fact the case law is clear that it is an extraordinary remedy." (*Id.* at 12.) However, given that the Parties were "almost two years into this case" and had attempted "three failed mediations," the bankruptcy court concluded that "the appointment of a trustee under 11 U.S.C. [§] 1104(a)(2) is warranted here." (*Id.*)[11]

In issuing the Trustee Order, the bankruptcy court relied on: (1) the acrimonious relationship between the Parties; (2) the considerable expenses involved in proceeding without a trustee; and (3) the desire to extend the time available for Parties to commence avoidance actions. (*See id.* at 12–15.) The bankruptcy court used a "cost benefit analysis" to determine whether the § 1104(a)(2) standard was met. (*See id.* at 12.) Regarding the benefits of appointing a trustee, the bankruptcy court examined the likelihood of further delay given that "there are competing [reorganization] plans on the table, both of which contemplate substantial litigation over various issues, including fairly complex valuation issues as well as claim allowance issues." (*Id.*) As the bankruptcy judge explained:

> The appointment of a trustee[,] while not curtailing any party's substantive rights . . . would shorten and potentially reduce the cost of the process of [Debtor] exiting Chapter 11. I think it's important to have an objective third party at this point serving in this case whose point of view can on a daily basis[,] as opposed to during what [have] been incremental attempts to mediate the case failed[,] which is to continue as I said on a daily basis[,] to move the process forward . . . .

---

[11] At the hearing, the bankruptcy court acknowledged that allegations of post-petition conduct by Debtor might justify the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a)(1), (June 5, 2017 Hr'g Tr. 11), which allows for appointment of a trustee "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management," 11 U.S.C. § 1104(a)(1). However, the bankruptcy court stated that, based on the record and on its "exposure to the facts in countless hearings before the court," it was focusing on § 1104(a)(2). (*Id.*)

(*Id.* at 12–13.)  In terms of the predicted costs to the Debtor, the bankruptcy court further explained that "[o]ne of the reasons that the appointment of a trustee is an extraordinary remedy is that it replaces the Debtor and the management of his—or its business."  (*Id.* at 13.)  Yet, the bankruptcy court found this factor to be lessened here as, "the business is largely one that is being managed by third parties . . . [s]o the remaining business that the Debtor has here is managing various litigat[ion]s and related professionals."  (*Id.*)  The bankruptcy court determined that exclusivity "has already been ended and . . . offsetting the cost of a trustee is the fact that there's going to be considerable cost and delay without a trustee and less direction in the case."  (*Id.*)

In its analysis, the bankruptcy court also considered the fact that the appointment of a trustee would extend the time to bring avoidance actions under 11. U.S.C. § 546(a).  (*See id.* at 10.)  With the bankruptcy case approaching the two-year mark, at which point the statute of limitations would bar avoidance actions, the bankruptcy court found "that extension [was] an important fact," especially "if the [P]arties continue[d] to be sincere about resolving [the] case on a consensual basis."  (*Id.*)

On June 6, 2017, the bankruptcy court signed an order granting the UST's motion and directing the appointment of a Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a)(2).  (A341.)  On June 8, 2017, the United States Trustee appointed Stephen S. Gray as Chapter 11 trustee.  (*See* A328.)  On June 19, 2017, Debtor filed a Notice of Appeal, appealing the Bankruptcy Court's order granting the Motion To Appoint a Trustee.  (Notice of Appeal (Dkt. No. 1).)  On November 10, 2017, the Parties submitted a stipulation regarding a briefing schedule for the instant Appeal.  (Dkt. No. 8.)  Debtor thereafter filed his brief on January 29, 2018.  (Br. for

10

Appellant Sammy Eljamal ("Debtor Br.") (Dkt. No. 12).) The Committee of Unsecured Creditors filed its brief on February 28, 2018, (Br. for Appellee Committee of Unsecured Creditors of Sammy Eljamal (Dkt. No. 15)), while the United States Trustee filed its brief on March 12, 2018, (Br. for Appellee the UST ("UST Br.") (Dkt. No. 16)). Debtor filed his Reply on April 19, 2018. (Reply Br. for Appellant Sammy Eljamal ("Debtor Reply Br.") (Dkt. No. 17).)

## II. Discussion

### A. Standard of Review

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a). "[A] district court reviews a bankruptcy court's discretionary decisions for abuse of discretion." *Taub v. Adams*, No. 10-CV-2600, 2010 WL 8961434, at *4 (E.D.N.Y. Aug. 31, 2010); *see also In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997) (same). "[A] bankruptcy court's determination[] of whether to appoint a trustee . . . [is] reviewed under an abuse of discretion standard." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006); *see also In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 474 (3d Cir. 1998) (same); *Taub*, 2010 WL 8961434, at *4 (same). "A bankruptcy court abuses its discretion when it bases its decision on an erroneous view of the law or clearly erroneous factual findings, or where it commits a clear error of judgment." *Taub*, 2010 WL 8961434, at *4; *see also In re Blaise*, 219 B.R. 946, 950 (2d Cir. 1998) (same). Under the clear error standard, "'there is a strong presumption in favor of a trial court's findings of fact if supported by substantial evidence,' and a reviewing court will not upset a factual finding 'unless it is left with the definite and firm conviction that a mistake has been committed.'" *In re Carssow-Franklin*, 213 F. Supp. 3d 577, 582 (S.D.N.Y. 2016) (alterations omitted) (quoting

*Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994)); *see also Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) ("[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (internal quotation marks omitted)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Travellers Int'l*, 41 F.3d at 1574–75 (internal quotation marks omitted); *see also UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (same); *In re CBI Holding Co., Inc.*, 419 B.R. 553, 563 (S.D.N.Y. 2009) ("In reviewing findings for clear error, an appellate court is not allowed to second-guess the trial court's choice between competing inferences. Even if the appellate court might have weighed the evidence differently, it may not overturn findings that are not clearly erroneous." (alterations and internal quotation marks omitted)).

B.  Analysis

The sole issue raised on appeal is whether the bankruptcy court abused its discretion when it directed the appointment of a Chapter 11 trustee under 11 U.S.C. § 1104(a)(2).  (Debtor Br. 2.)

1.  Standard for Appointment of a Trustee

Under 11 U.S.C § 1104(a)(2), a court "shall" appoint a Chapter 11 trustee, "if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor."  The moving party, in this case the UST, "must prove, by clear and convincing evidence, that the appointment of a [C]hapter 11 trustee is warranted." *In re*

*Eurospark Industries, Inc.*, 424 B.R. 621, 627 (Bankr. E.D.N.Y. 2010); *see also In re Marvel Entm't Grp., Inc.*, 140 F.3d at 471 ("The party moving for appointment of a trustee . . . must prove the need for a trustee by clear and convincing evidence.").

Generally, a Chapter 11 debtor will remain in control of its estate, and the "appointment of a trustee should be the exception, rather than the rule." *Taub*, 2010 WL 8961434, at *5 (internal quotation marks omitted). *See also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 655 (Bankr. S.D.N.Y. 2006) (same), *aff'd*, 342 B.R. 122 (S.D.N.Y. 2006). Thus, there is a strong presumption against appointing an outside trustee, because "[t]he debtor-in-possession is a fiduciary of the creditors and, as a result, has an obligation to refrain from acting in a manner which could damage the estate, or hinder a successful reorganization." *In re Marvel Entm't Grp., Inc.*, 140 F.3d at 471; *see also Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003) (noting that there is a "strong presumption that the debtor should be permitted to remain in possession," because, "appointing a trustee amounts to replacing much of a debtor's high-level management" (internal quotation marks omitted)); *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 524 (Bankr. E.D.N.Y. 1989) (noting that the assumption that the debtor will remain in possession of the estate "arises from a belief that current management is generally best suited to orchestrate the process of rehabilitation for the benefit of creditors and other interests of the estate").

"This presumption, however, is rooted primarily in practical considerations." *Taub*, 2010 WL 8961434, at *5; s*ee also In re Marvel Entm't Grp. Inc.*, 140 F.3d at 471 (explaining that the presumption arises from management's suitability to operate business, the fact that there is typically no need for a trustee, and the fact of "the debtor-in-possession's usual familiarity with

the business," which, "often mak[es] it the best party to conduct operations during the reorganization"). Put simply, a bankruptcy court's decision to appoint a trustee is to be made on a case-by-case basis, and the facts may weigh against retaining the debtor as debtor-in-possession. *Taub*, 2010 WL 8961434, at *5 ("In the appropriate case . . . the facts may militate against retaining the debtor as debtor-in-possession"); *see also In re Marvel Entm't Grp., Inc.*, 140 F.3d at 471 (finding the presumption against a trustee inappropriate where management of a company was already conducted by interests other than the debtor at time of bankruptcy filing).

Some of the factors generally considered in deciding whether to appoint a Chapter 11 trustee include: (1) the trustworthiness of the parties, *see In re Eurospark Indus., Inc.*, 424 B.R. at 627; (2) "the level of acrimony between interested parties," *Taub*, 2010 WL 8961434, at *6; (3); "the confidence—or lack thereof—of the business community and of creditors in present management," *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990); and (4) "the benefits derived by the appointment of a trustee, balanced against the cost of the appointment," *id.*; *see also In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 112 (Bankr. S.D.N.Y. 2008) (listing of the factors considered in *In re Ionosphere Clubs, Inc.*, but noting that "the standard is a flexible one"); *In re U.S. Mineral Prod. Co.*, No. 01-CV-2471, 2004 WL 115234, at *3 (D. Del. Jan. 16, 2004) (finding a bankruptcy court's consideration of "the acrimony that exists between the creditor bodies and the principal" and "the credibility of the debtor" to be proper), *aff'd*, 105 F. App'x 428 (3d Cir. 2004). "These are only some of the factors a court might consider, however, as § 1104(a)(2) envisions a flexible standard, and gives the . . . court discretion to appoint a trustee when to do so would serve the parties' and estate's interests." *Taub*, 2010 WL 8961434, at *6 (internal quotations omitted); *see also In re V. Savino*

*Oil & Heating Co.*, 99 B.R. 518, 527 n. 11 ("[T]he factors constituting a basis for appointing a trustee under § 1104(a)(2) are amorphous, diverse, and necessarily involve a great deal of judicial discretion."). Generally, courts have focused on the discretionary nature of the appointment decision, which involves to some extent weighing equities and determining whether "the balance of interests . . . weighs in favor of appointing a trustee." *In re Marvel Entm't Grp., Inc.*, 140 F.3d at 475 (internal quotation omitted); *see also In re Ridgemour Meyer Properties*, 413 B.R. at 113 ("Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists."); *In re Adelphia Communications Corp.*, 336 B.R. at 656, ("The decision to appoint a trustee in a [c]hapter 11 case is a factual determination left to the discretion of the bankruptcy judge.").

### 2. Analysis

The bankruptcy court's conclusion that appointment of a Chapter 11 trustee was warranted under 11 U.S.C. § 1104(a)(2) was based on the following: (1) the high level of acrimony between the Parties, (*see* June 5 Hr'g Tr. 14); (2) the failure of the Parties to move the case forward in a timely manner, (*see id.* at 12–13); (3) the ability of the Parties to file avoidance actions within the applicable statute of limitations, (*see id.* at 10); and (4) the bankruptcy court's determination that the benefits of appointing a trustee outweighed the costs, (*see id.* at 12).

Debtor contends that the level of acrimony in the present case is no greater than what is to be expected from standard litigation proceedings. (Debtor Br. 47–48.)[12] Debtor also contends

---

[12] Additionally, Debtor argues that acrimony *alone* does not justify the appointment of a trustee under 11 U.S.C. § 1104(a)(2). (*See* Debtor Br. 38) (emphasis added). While acrimony is only one of many factors the bankruptcy court considered in the present case, the Court notes that "acrimony between the creditors and the debtor's management, standing alone, has been found to be a basis to appoint a [C]hapter 11 trustee under § 1104(a)(2)." *In re Eurospark*

that the bankruptcy court abused its discretion because appointment of a Chapter 11 trustee was unnecessary given the circumstances, as the remaining disputes had already been litigated, any blockage preventing the case from moving forward had been cleared, and, thus, there was no need for a trustee to expedite the process. (*See id.* at 38–40.) According to Debtor, the bankruptcy court's appointment of a Chapter 11 trustee "penalized the Debtor for the misconduct of his adversaries," namely the Committee, was unfair to the Debtor, and thus constituted an abuse of discretion.[13] (*See id.* at 46; Debtor Reply Br. 25.)[14]

### a. Acrimony

First, in appointing a Chapter 11 trustee, the bankruptcy court considered the degree of acrimony between the Parties. Other courts have found "the degree of acrimony between relevant parties merited appointment of a Chapter 11 trustee." *Taub*, 2010 WL 8961434, at *9; *see also In re Marvel Entm't Grp., Inc.*, 140 F.3d at 474 ("The level of acrimony found to exist . . . certainly makes the appointment of a trustee in the best interests of the parties and the

---

*Indus.*, 424 B.R. at 630; *see also In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010) (same), *adopted by* 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011).

[13] Debtor also argues his solvency makes appointment of a trustee particularly inappropriate and further constituted an abuse of discretion. (*See* Debtor Br. 50.) Debtor is correct that this is "an unusual case in that the . . . debtor is potentially very solvent." (*Id.* (citing A497).) However, the crux of the bankruptcy court's decision to appoint a Chapter 11 trustee was the desire to "shorten and potentially reduce the cost of the process of [Debtor] exiting Chapter 11." (June 5, 2017 Hr'g Tr. 12–13.) Section 1104(a)(2) also specifies that the court should consider the appointment of a Chapter 11 trustee "without regard to the number of holders of securities of the debtor or *the amount of assets or liabilities of the debtor*." § 1104(a)(2) (emphasis added). The appointment of a trustee, therefore, was not inconsistent with Debtor's likely solvency.

[14] Debtor submitted a Reply Brief which includes unnumbered pages. (*See* Debtor Reply Br.) For ease of reference, the Court will refer to the ECF-generated page number in the top right corner of the electronically filed document.

estate.").  As noted, Debtor contends that the level of acrimony in the present case is no greater

than what is to be expected from standard litigation proceedings.  (*See* Debtor Br. 43 ("[T]here is

nothing unusual about those litigations . . . however contentious they may be.  Indeed, given the

nature of the disputes—direct and derivative claims of fiduciary breaches and counterclaims of

the same type—it would be unusual if they were not contentious").)

Here, however, the bankruptcy court "appropriately considered the level of acrimony

between the [P]arties," *Taub*, 2010 WL 8961434, at *5, and found it to be sufficiently high to

warrant appointment of a trustee.  No Party disputes that there is a long history of acrimony

between the Parties in this case.  (*See* Debtor Br. 45 ("As the [c]ase progressed, the acrimony

was manifested in sometimes new and creative ways"); UST Br. 28 ("The record in this case is

loaded with evidence of acrimony and dysfunction.  The dislike and hostility among the [P]arties

ran both ways.").)  As discussed above, the relationship between the Parties was contentious

prior to the bankruptcy proceedings, and this acrimony carried over into the bankruptcy case.

Over the course of nearly three years of litigation after Debtor filed his initial Chapter 11

petition, the Parties have filed numerous adversary actions against each other, (*see, e.g.*,

Adversary Case No. 15-08361 (Bankr. Dkt. No. 98); Adversary Case No. 15-08362 (Bankr. Dkt.

No. 110); Adversary Case No. 16-08217 (Bankr. Dkt. No. 223)), and the bankruptcy court

proceedings have been hampered by numerous discovery disputes, (*see* Omnibus Obj. of Cmte.;

Disclosure Statement 14).  *See also Petit v. New England Mortg. Servs. Inc.*, 182 B.R. 64, 65 (D.

Me. 1995) (affirming the appointment of a trustee because, among other reasons, "[t]he

postpetition proceedings [were] hampered by numerous discovery disputes").  While the

bankruptcy court stepped in numerous times throughout these proceedings, and frequently

attempted to mediate a resolution, the Parties remained unable to resolve their differences. (*See* June 5, 2017 Hr'g Tr. 12–13.) Instead, the acrimony between the Parties continued at such a high level that the United States Bankruptcy Judge in this case noted that, "there didn't appear to by any cooperation" between the Parties, (A370 (Jan. 6, 2017 Hr'g Tr. 23)), and that "[it was] an ugly situation on all sides," (Feb. 14, 2017 Hr'g Tr. 20). This sequence of events provided an ample factual basis for the bankruptcy court to determine that it was "important to have an objective third party," (June 5, 2017 Hr'g Tr. 13), to alleviate a level of acrimony that "went beyond the inherent conflicts under which all healthy cooperatives operate," *In re Marvel Entm't Grp., Inc.*, 140 F.3d at 472 (internal quotation marks omitted); *see also In re Ancona*, No. 14-BK-10532, 2016 WL 7868696, at *12 (Bankr. S.D.N.Y. Nov. 30, 2016) (finding "the conflict and acrimony between the [d]ebtor and the [creditor] . . . may be alleviated, to some extent, by the presence of a neutral trustee"). Further, given the history of contentious litigation between the Parties, it was reasonable for the bankruptcy court to find that the acrimony between them would continue at an unacceptable level without management by an objective third party. (*See* June 5, 2017 Hr'g Tr. 12.) *See Taub*, 2010 WL 8961434, at *1, 9 (noting that where the case arose "against the backdrop of contentious divorce proceedings between the debtor and her husband . . . the degree of acrimony between relevant parties merited appointment of a Chapter 11 trustee"); *Petit*, 182 B.R. at 70 (D. Me. 1995) ("The tangled history of the[] proceedings suggest[ed] that 'friction' could continue at an unacceptable level.").

Debtor also argues that the level of acrimony in the present case is due primarily to the conduct of Coscia and the Committee. (See Debtor Br. 39 ("The record in this [c]ase establishes that its difficulties are the result of the conduct of Weil, Silverman, and Coscia, including as

reflected in the conduct of the Committee").)  Even assuming that much of the blame for the

acrimony between the Parties rests with the actions of Coscia and the Committee, that does not

change the fact that, "such acrimony . . . seriously delayed resolution of the case."  *Taub*, 2010

WL 8961434, at *9.  And, there is plenty of evidence in the record supporting the conclusion that

Debtor bore some of the responsibility for the high level of acrimony in this case.  (*See*, *e.g.*,

A30–35; A50–52; A175–76.)  Thus, the bankruptcy court did not abuse its discretion in

appointing a Chapter 11 trustee based in part on the contentious relationship between the Parties

because "[t]he level of acrimony found to exist in this case certainly makes the appointment of a

trustee in the best interests of the [P]arties and the estate."  *In re Marvel Entm't Grp., Inc.*, 140

F.3d at 474.

### b. Cost Benefit Analysis

Additionally, in finding that appointing a trustee was in the best interests of creditors, the

bankruptcy court properly conducted "a cost benefit analysis."  (June 5, 2017 Hr'g Tr. 12.)  *See*

*Taub*, 2010 WL 8961434, at *6 (considering "the benefits derived by the appointment of a

trustee, balanced against the cost of the appointment" (internal quotation marks omitted)); *In re*

*Eurospark*, 424 B.R. at 627 (same); *In re Ionosphere Clubs*, 113 B.R. at 168 (same).  The

bankruptcy court found that "[t]he appointment of a trustee while not curtailing any party's

substantive rights . . . would shorten and potentially reduce the cost of the process of [Debtor]

exiting Chapter 11."  (June 5, 2017 Hr'g Tr. 12.)  The bankruptcy court also noted that the

appointment of a trustee came "almost two years into this case and following three failed

mediations," where there was no likelihood that plans would be "confirmed any time soon

without considerable expense and in all likelihood substantial modification of the plan." (*Id.* at 14.)

Debtor raises several arguments as to why costs to the Debtor and his estate outweigh the benefits of appointing a trustee. First, Debtor argues that appointment of a trustee serves as an unwarranted penalty on the Debtor, outweighing any benefits of appointing a trustee. (*See* Debtor Br. 46; Debtor Reply Br. 25.) Initially, Debtor objected to the remedy of appointing a trustee, arguing it was "misplaced" and "the [b]ankruptcy [c]ourt's core abuse of discretion," because "[i]nstead of doing anything to those who had betrayed its trust . . . the [b]ankruptcy [c]ourt penalized the Debtor for the misconduct of his adversaries." (Debtor Br. 46.) Debtor later acknowledged that "[p]enalizing the Debtor was not the Bankruptcy Court's intent," and that "the Bankruptcy Court's decision was not necessarily improper because [it penalized the Debtor]." (Debtor Reply Br. 24–25.) However, Debtor maintains that "when the [b]ankruptcy [c]ourt appointed the Trustee, there was simply no reason to do so," and "it is unfair for the Debtor to be effectively punished when it was he who discovered the improprieties [of the Committee]." (*Id.* at 24–25.)

As an initial matter, it is important to note that the "[a]ppointment of a Chapter 11 trustee, pursuant to § 1104(a)(2), is not punishment, nor does it imply a finding of fault." *Taub*, 2010 WL 8961434, at *5; *see also In re Ionosphere Clubs, Inc.*, 113 B.R. at 168 (noting that one purpose of appointing a trustee is "facilitation of a reorganization that will benefit both the creditors and the debtors, as contemplated in current [C]hapter [11]" (internal citation marks omitted)). While it is true that, "upon appointment of a Chapter 11 trustee, the debtor loses a degree of personal control over the estate, the responsibilities of a Chapter 11 trustee are, in

almost every respect, no different than those already held by the debtor-in-possession." *Taub*,
2010 WL 8961434, at *5. Further, the relevant issue here is not which Party should be blamed
for causing the delay, but rather that the case had continuously been delayed, to the point that "an
objective third party" was needed "to move the progress forward." (June 5, 2017 Hr'g Tr. 12–
13.) Indeed, Debtor's concerns with regard to the deceptive actions of the Committee would
*support* the appointment of a neutral third party, who would, inter alia, help eliminate any
alleged abuses by the Committee against the Debtor. (Feb 14, 2017 Hr'g Tr. 19) ("[M]y strong
inclination is to appoint a trustee and disband the [C]ommittee and just have the trustee operate
the case. I don't trust anyone in this case at this point. Anyone.").) Thus, appointment of a
trustee was not used to penalize the Debtor; rather, a trustee was seen as in the interest of both
Debtor and creditors under the circumstances—a factual determination was well within the range
of permissible views of the evidence. (*See* June 5, 2017 Hr'g Tr. 14 ("[A Trustee] would . . .
take into account the actual facts and circumstances of the case and all the parties, including the
debtor's positions.").) *See also Taub*, 2010 WL 8961434, at *5 ("[A]ppointing a Chapter 11
trustee pursuant to § 1104(a)(2) is . . . an acknowledgement that under the circumstances—and
despite whatever efforts the debtor may have made in the past—it is now in the interest of
creditors and other interests of the estate to have an independent third-party assume control."); *In
re V. Savino Oil & Heating Co.*, 99 B.R. at 527 n. 11 ("In essence, . . . it seems that § 1104(a)(2)
reflects the practical reality that a trustee is needed" (internal quotation marks omitted)).

Second, Debtor argues the appointment of a Chapter 11 trustee would not serve to
expedite the Debtor's bankruptcy exit and, thus, would incur no real benefit to creditors, equity
security holders, or the estate. (*See* Debtor Br. 42; Debtor Reply Br. 18.) Here, however, the

bankruptcy court did not abuse its discretion in concluding otherwise. In terms of costs, the bankruptcy court explained that, "appointment of a trustee is an extraordinary remedy [because] it replaces the debtor and the management of his . . . business," and "because it ends exclusivity." (June 5, 2017 Hr'g Tr. 14.) Yet, Debtor's degree of personal control is less of an issue here, because, as the bankruptcy court noted, "[Debtor's] business is largely one that is being managed by third parties. So the remaining business that the Debtor has here is managing various litigat[ion]s and related professionals." (*Id.*) The bankruptcy court further emphasized that exclusivity was ended when it appointed a trustee, lessening the cost to the Debtor which generally comes from appointment of a trustee. (*Id.*) The bankruptcy court also noted that the cost of a trustee is offset by the fact that "there's going to be considerable cost and delay without a trustee and less direction in the case." (*Id.* at 13.)

Debtor contends this is not the case. Instead, Debtor contends that by the time the Trustee Motion was granted, "matters in the [c]ase had stabilized," (Debtor Reply Br. 7), "the major source of . . . acrimony had already been exposed," (*id.* at 13), and any blockage "preventing the [c]ase from moving forward was removed," (*id.* at 14).[15] However, prior disputes between the Parties, the acrimony remaining in the case, and the deceptive actions of the Committee indicate the opposite. *See Taub*, 2010 WL 8961434, at *3 ("In issuing the [t]rustee

---

[15] Debtor also points to the fact that he "submitted a Joint Plan of Reorganization (with his father, creditor Musa Eljamal), which proposed a simple resolution of the [c]ase, i.e., let the disputes proceed on their merits." (Debtor Reply Br. 7 (citation omitted).) First, the Parties were unable to come to an agreement on this plan. The Committee rejected it prior to the bankruptcy court's decision to appoint a trustee. Second, even if the Trustee Motion had not been granted, it is unclear whether Debtor's proposed plan would help facilitate a settlement. As Appellees note, the plan "settled nothing and paid none of the major creditors. Instead, the [Joint P]lan provided that all of the dozens of lawsuits, appeals and motions would continue in the state and federal courts—the antithesis of what a bankruptcy plan is supposed to accomplish." (*See* UST Br. 30.)

[o]rder, the bankruptcy court relied on a pattern of acrimony, flawed administration, and the failure to move forward with a plan for reorganization."); *see also In re U.S. Mineral Prod. Co.*, 105 F. App'x at 430 (noting that the bankruptcy appointed "a Chapter 11 trustee based on the length of time the proceedings had been pending, the size of the case, the contentious and acrimonious nature of the relationships among the parties, the lack of trust, [and] the lack of progress").  By the time the Trustee Motion was granted, the Parties had already engaged in three failed mediations, there were two competing reorganizations plans on the table, "both of which contemplate[d] substantial litigation over various issues," and the Parties had spent two years with relatively little progress in reaching a settlement or otherwise advancing the case.  (June 5, 2017 Hr'g Tr. 13.)  Indeed, even prior to appointing a trustee, the bankruptcy court noted that "there [were] serious questions as to the debtor's ability to carry out [the] case."  (Hr'g Tr. 42 (April 25, 2017 Hr'g) (Bankr. Dkt. No. 587).)  *See In re Euro-Am. Lodging Corp.*, 365 B.R. 421, 432 (Bankr. S.D.N.Y. 2007) (appointing a Chapter 11 trustee when "the creditors [did] not have confidence in the present management").  Even if the Court adopted Debtor's view that the actions of the Committee were the true cause of the delay, the third and final mediation was conducted *after* the allegedly deceptive actions of the Committee were known, indicating there were still issues "preventing the [c]ase from moving forward."  (Debtor Reply Br. 14.)  *See also In re Taub*, 427 B.R. at 228 ("[A] court may find appointment of a trustee is warranted when a debtor's failure to move a case forward in the direction of a successful reorganization has caused the creditors to lose confidence that reorganization is, in fact, possible.").  Thus, the bankruptcy court could reasonably find that the appointment of a trustee was necessary at this stage of the proceedings in order to streamline resolution of the case.  (June 5, 2017 Hr'g Tr. 13.)  While

Debtor may disagree with the bankruptcy court's decision, given the factual findings discussed above, the court's "discretionary choice falls within the range of reasonable judicial determinations, [and] there is no basis to find such an appointment to be out of the permissible bounds of "the bankruptcy code." *Tradex Corp. v. Morse*, 339 B.R. 823, 829 (D. Mass. 2006); *see also In re Adelphia Communications Corp.*, 336 B.R. at 656 ("The decision to appoint a trustee in a [C]hapter 11 case is a factual determination left to the discretion of the bankruptcy judge.").

### c. Avoidance Actions

A final consideration the bankruptcy court addressed in appointing a trustee was the fact that the statute of limitations on avoidance claims was nearly expired. (June 5, 2017 Hr'g Tr. 10.) This consideration is relevant because appointment of a trustee would extend the period to bring avoidance claims for one year. *See* 11 U.S.C. § 546(a)(1)(B). Debtor argues that a "§ 546(a) statute-of-limitations argument" did not justify the appointment of a Trustee due to the "availability of remedies to address this concern—the filing of placeholder actions or an extension of time." (Debtor Reply Br. 22.) As an initial matter, Plaintiff cites no case law where courts have found that consideration of future potential avoidance actions is inappropriate, while the UST identifies at least one case indicating that such considerations are proper. (UST Br. 34–35 (citing *In re Microwave Prod. of Am., Inc.*, 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989) (finding grounds to appoint a trustee under § 1104(a)(2) because, *inter alia*, "the debtor is not in a strong posture to pursue possible claims that may have resulted from conflicts of interest and fraudulent transfers, [and] a trustee would likely be able to investigate claims that could result in additional sums of money coming into the estate")).) Moreover, even if consideration of this

factor would, on its own, be insufficient to appoint a trustee, the availability of avoidance actions was merely *one* of the *many* factors the bankruptcy court considered when weighing the benefits derived by the appointment of a trustee, balanced against the cost of the appointment. (*See* June 5, 2017 Hr'g Tr. 10–14.) *See Taub*, 2010 WL 8961434, at *6 (noting that the bankruptcy court is not limited to any specific factors in their analysis, "as § 1104(a)(2) envisions a flexible standard"); *In re Ridgemour Meyer Properties, LLC*, 413 B.R. at 112 (same).

The facts outlined above provide ample support for the bankruptcy court's decision to appoint a Chapter 11 trustee. Thus, the Court concludes that the bankruptcy court did not abuse its discretion in appointing a Chapter 11 Trustee and affirms the bankruptcy court's June 5, 2017 ruling.

### III. Conclusion

For the reasons given herein, the judgment of the bankruptcy court is affirmed. The Clerk of the Court is respectfully requested to close this case.

SO ORDERED.

DATED:          September 28, 2018
                White Plains, New York

                                              KENNETH M. KARAS
                                              UNITED STATES DISTRICT JUDGE